UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: SHENGDATECH, INC.,<br><br>   Debtor.<br><br>SHENGDATECH LIQUIDATING TRUST,<br><br>   Plaintiff,<br><br>   vs.<br><br>HANSEN, BARNETT & MAXWELL, P.C., et al.,<br><br>   Defendants. | Case No.:   3:13-cv-00563-RCJ<br>Adv. No:     13-ap-05046-BTB<br>Bankr. No.: 11-bk-52649-BTB<br><br><br>ORDER |

This withdrawn adversary proceeding arises out of the alleged professional negligence, breach of contract, and fraudulent conveyance by an auditor for failing to detect the diversion of a corporation's assets and manipulation of its books by its highest officer. Pending before the Court is a Motion to Dismiss (ECF No. 41). For the reasons given herein, the Court grants the motion.

I.     FACTS AND PROCEDURAL HISTORY

Plaintiff, ShengdaTech Liquidating Trust ("the Trust"), is the successor-in-interest to ShengdaTech, Inc.'s claims and causes of action following a Plan of Reorganization approved by

the United States Bankruptcy Court for the District of Nevada and a Liquidating Trust Agreement. (*See* Am. Compl. ¶¶ 4, 17, May 28, 2014, ECF No. 29). The Trust seeks to recover from an outside auditor, Hansen, Barnett & Maxwell, P.C. ("Hansen"), for failing to detect and report ShengdaTech's senior management's "looting" of corporate funds in 2007 and 2008. (*See id.* ¶¶ 4, 15, 16).[1]

### A.     ShengdaTech

ShengdaTech, now defunct, was a Nevada corporation operating in the People's Republic of China. (*Id.* ¶ 4). ShengdaTech manufactured a specialty additive "widely applied in the paint, paper, plastic, and rubber industries" and used in materials such as PVC. (*Id.* ¶ 23). The company traded on the NASDAQ beginning in 2007. (*Id.* ¶ 25).

ShengdaTech's Board of Directors was controlled by a majority of non-management directors. (*Id.* ¶ 5). Xiangzhi Chen ("Chen") was ShengdaTech's Chairman of the Board of Directors, Chief Executive Officer, and its largest shareholder, owning about 42 percent of the company's outstanding shares. (*Id.* ¶¶ 11, 24).

### B.     Hansen's Auditing Work

Hansen, a Utah accounting firm, was ShengdaTech's outside auditor from December 2006 to November 2008. (*Id.* ¶ 26). ShengdaTech's Board of Directors retained Hansen to perform audits of ShengdaTech's internal financial reporting controls for the 2007 fiscal year, its 2007 Financial Statements, and its 2008 Quarterly Financial Statements. (*Id.* ¶ 62). The engagement letter for Hansen's services required Hansen to comply with the standards of the Public Company Accounting Oversight Board ("PCAOB"). (*Id.* ¶¶ 61–62).

---

[1] The Amended Complaint also lists allegations against additional Defendants for their outside auditing work of ShengdaTech from 2008 to 2011. (*See id.* ¶¶ 9–15). These Defendants have since settled with the Trust and have been dismissed from the case.

In connection with its audit of ShengdaTech's internal financial reporting controls for 2007, Hansen issued an unqualified opinion "that [ShengdaTech] maintained effective internal controls over financial reporting." (*Id.* ¶ 30). In its audit of the 2007 Financial Statements, "Hansen issued an unqualified audit opinion . . . stating that [the statements] fairly presented [ShengdaTech's] financial condition and the results of its operations in accordance with [accounting principles generally accepted in the United States,] US GAAP." (*Id.*). Hansen's review of the 2008 Quarterly Financial Statements also did not reveal any concerns. (*Id.* ¶ 32).

ShengdaTech paid Hansen $295,375 for its audit of the 2007 Financial Statements and $45,000 for reviewing the 2008 Quarterly Financial Statements. (*Id.* ¶ 91). In November 2008, ShengdaTech fired Hansen and hired KPMG Hong Kong ("KPMG HK") as its outside auditor. (*Id.* ¶ 77).

### C. KPMG HK's Auditing Work

KPMG HK similarly issued unqualified opinions on ShengdaTech's 2008 and 2009 Financial Statements. (*Id.* ¶ 33). Like those of Hansen, these opinions stated that the financial statements "fairly presented [ShengdaTech's] financial condition and the results of its operations in accordance with US GAAP." (*Id.*). Despite identifying a "material weakness" in ShengdaTech's internal control over financial reporting for 2008, KPMG HK found ShengdaTech's internal financial controls in 2009 to be sufficient. (*Id.* ¶¶ 33, 77). KPMG HK's review of the 2009 and 2010 Quarterly Financial Statements raised no additional concerns. (*Id.* ¶ 35).

### D. Events Precipitating ShengdaTech's Filing for Bankruptcy

In March 2011, however, KPMG HK notified ShengdaTech's Audit Committee of "potentially serious discrepancies and unexplained issues" in its audit of the company's 2010

Financial Statements. (*Id.* ¶¶ 37–38). Many of the problems initially discovered stemmed from KPMG HK's inability to confirm ShengdaTech's recorded sales. (*Id.* ¶ 38). These problems led the Audit Committee to form a Special Committee to conduct an internal investigation. (*Id.* ¶ 39).

In the coming weeks, KPMG HK discovered and reported to the Special Committee more discrepancies in the financial statements, including irregularities in customer and bank confirmations. (*Id.* ¶¶ 41, 43). For example, one communication from a customer confirmed that the customer had not purchased anything from ShengdaTech in 2010 while ShengdaTech's records indicated the customer had purchased the equivalent of over $1.2 million in goods in 2010. (*Id.* ¶ 41). In another example, ShengdaTech's account balance at the Bank of China Tai'an Branch was $67.61 while ShengdaTech's records indicated the balance was $50,054.18. (*Id.*).

Other irregularities included the fact that two of ShengdaTech's top recorded suppliers in 2010 refused to allow KPMG HK to perform site visits, and one of the suppliers informed KPMG HK that it had not conducted business with ShengdaTech in quite some time. (*Id.* ¶ 43). More discrepancies appeared in certain bank transactions in 2008 and 2009 in which Chen was involved. (*Id.* ¶ 43, n.2).

As a response to the alarming irregularities in ShengdaTech's financial statements, the Special Committee implemented a Cash Control Plan which required ShengdaTech's management, specifically Chen, to transfer all of its cash assets into accounts over which the Audit Committee would have sole control. (*Id.* ¶ 44). After initially refusing to cooperate, Chen eventually transferred $14 million of cash assets into the accounts, at least $95 million shy of the

amounts ShengdaTech reported having in the years 2008, 2009, and 2010. (*Id.*). Upon request by the Special Committee, Chen was unable to verify the location of the remaining funds. (*Id.* ¶ 45).

The discovery of the serious discrepancies in ShengdaTech's financial statements caused ShengdaTech to unravel in 2011: on May 5, ShengdaTech filed a Form 8-K with the Securities and Exchange Commission ("SEC") and "issued a press release disclosing KPMG HK's resignation and warning investors against continued reliance upon KPMG HK's audit reports on the 2008 and 2009 Financial Statements," (*id.* ¶ 49); in June, ShengdaTech defaulted on notes issued pursuant to various Offering Memoranda, (*id.* ¶ 51); on August 11, the SEC initiated a regulatory proceeding against ShengdaTech involving possible violations of federal securities laws, (*id.* ¶ 52); on August 19, the Special Committee fired the management team for ShengdaTech, including Chen, (*id.* ¶ 53); also on August 19, ShengdaTech filed for bankruptcy in the United States Bankruptcy Court for the District of Nevada, (*id.*); and on December 15, NASDAQ delisted ShengdaTech, (*id.* ¶ 55).

The Trust succeeded to all of ShengdaTech's claims and causes of action pursuant to the Plan of Reorganization approved by the United States Bankruptcy Court on October 2, 2012 and a Liquidating Trust Agreement executed on October 17, 2012. (*Id.* ¶¶ 17–18).

### E. The Present Case

On August 15, 2013, the Trust brought an adversary proceeding in the Bankruptcy Court naming three defendants: Hansen, KPMG International Cooperative ("KPMG International"), and KPMG LLP ("KPMG USA"). The Court granted KPMG International and KPMG USA's motion to withdraw the reference in full. In an Amended Complaint ("AC"), the Trust added KPMG HK as a Defendant.

The claims alleged in the AC were: (1)–(3) professional negligence and malpractice, (4)–(5) breach of contract, and (6) fraudulent transfer under Nevada Revised Statutes ("NRS") sections 112.180(1)(b) and 112.190(1). The Trust brought claims for professional negligence and malpractice against all Defendants,[2] claims for breach of contract against Hansen and KPMG HK, and a claim for fraudulent conveyance against Hansen only. All KPMG Defendants settled with the Trust, and the claims against them were dismissed.

In the remaining claims against Hansen, the Trust alleges that Hansen should have corroborated ShengdaTech's bank account balance sheets, discovered that ShengdaTech's reported sales were false, and discovered that management had falsified purchase transactions. (*See id.* ¶¶ 65–73). Additionally, the Trust alleges that Hansen should have adjusted its audit procedure to account for the fact that ShengdaTech had no internal audit procedures in 2007 and for most of 2008. (*Id.* ¶ 76). Hansen's failure to perform its work in this manner, the Trust alleges, prevented ShengdaTech's Board of Directors from learning of the discrepancies earlier and "tak[ing] remedial actions to prevent further defalcations of funds, cure any internal control deficiencies, and ensure the accuracy of [ShengdaTech's] financial reporting." (*Id.* ¶ 85).

Hansen has moved to dismiss all of the claims against it for failure to state a claim for relief.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47

---

[2] The third cause of action against KPMG International and KPMG USA for professional negligence and malpractice was founded on a *respondeat superior* theory due to the entities' supervisory and facilitative involvement in KPMG HK's auditing work. (*Id.* ¶ 111).

(1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  Unlike the word's lay definition, "plausibility" under Rule 8(a) is not a factual test of the likelihood a plaintiff's allegations are true, but a legal test of whether the allegations, if assumed to be true, entitle the plaintiff to relief.  Under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), but also must allege the facts of his case so that the court can determine whether the plaintiff has any basis for relief under the legal theory he has specified or implied (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

### III.   ANALYSIS

#### A.   Affirmative Defenses

#### 1.   Statutes of Limitations

Hansen argues that the Trust's professional negligence and breach of contract claims are untimely because the claims' statutes of limitations had run prior to ShengdaTech filing for bankruptcy, thus precluding tolling of the claims under 11 U.S.C. § 108(a).

"A motion to dismiss based on the running of the statute of limitations period may be granted only 'if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206–07 (9th Cir. 1995) (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682

(9th Cir. 1980)). To dismiss the complaint, the running of the statute of limitations must be "apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).

### a.   Professional Negligence

The applicable statute of limitations for the professional malpractice claim is NRS section 11.2075. The statute provides that actions for malpractice against accountants must be brought within:

> (a) Two years after the date on which the alleged act, error or omission is discovered or should have been discovered through the use of reasonable diligence; (b) Four years after completion of performance of the service for which the action is brought; or (c) Four years after the date of the initial issuance of the report prepared by the accountant or accounting firm regarding the financial statements or other information, whichever occurs earlier.

Nev. Rev. Stat. § 11.2075(1). Assuming a claim has yet to expire, a corporation's filing for bankruptcy will toll the statute of limitations for the trustee's claim. 11 U.S.C. § 108(a).

Hansen argues that under NRS section 11.2075(1)(a), the two-year statute of limitations had run prior to ShengdaTech's August 19, 2011 bankruptcy filing. Hansen argues that because Chen, as an agent of the corporation, knew of the inaccurate financial statements and misconduct, Chen's knowledge was imputed to the corporation at the time the misconduct occurred, thus giving notice to ShengdaTech of a claim against Hansen. The Trust argues it is eligible for the "adverse interest exception," preventing imputation of Chen's knowledge to ShengdaTech because Chen was acting on his own behalf and not on behalf of the corporation.

Under Nevada law, to invoke the "adverse interest exception" to imputing a corporate officer's actions and knowledge to the corporation, an "agent's actions must be completely and totally adverse to the corporation." *Kahn v. Dodds (In Re AMERCO Derivative Litig.)*, 252 P.3d

681, 695 (Nev. 2011). Thus, if the officer's actions offer any benefit to the corporation, the "adverse interest exception" does not apply. *Id.*

The Trust pleads that Chen and his cohorts were "stealing money for their own gain." (*See* Am. Compl. ¶ 36). The Trust pleads no facts showing that ShengdaTech benefitted monetarily or otherwise from Chen's actions of falsifying records and improperly diverting corporate funds. Additionally, allegations suggesting that Chen's actions enabled ShengdaTech to thrive, attract investors, or raise funds are noticeably absent. Adjudged from the face of the Amended Complaint, the Court cannot find that ShengdaTech benefitted from Chen and his cohorts' misconduct. At this stage in the pleadings, the Court finds that the adverse interest exception applies, and Chen's knowledge of the inaccurate financial statements and managerial misconduct is not imputed to ShengdaTech.

Even if the adverse interest exception applies, Hansen argues, Nevada's "sole actor" rule limits the doctrine's application. Under the "sole actor" rule, if the officer is the "sole agent or sole shareholder" of a corporation, the officer's knowledge is still imputed to the corporation. *Kahn v. Dodds*, 252 P.3d at 695–96. In this case, Chen was neither ShengdaTech's sole agent nor majority shareholder, let alone its sole shareholder. As such, the "sole actor" rule does not limit the application of the adverse interest exception in this case.

Moreover, the Court rejects Hansen's argument that KPMG HK's March 2009 finding of "material weaknesses" in ShengdaTech's internal financial controls provided notice to ShengdaTech of a possible claim against Hansen. The running of the statute of limitations on this basis must be apparent on the face of the Trust's AC. *Von Saher*, 592 F.3d at 969. It is not clear to the Court that an awareness of material weaknesses in its company's *internal* financial controls (and *after* Hansen was no longer ShengdaTech's outside auditor) would equate to

ShengdaTech's notice of a claim against Hansen. Therefore, Hansen may not avail itself of the running of the statute of limitations under NRS section 11.2075(1)(a) on the grounds that ShengdaTech had notice of a possible claim against Hansen over two years before it filed bankruptcy in August 2011.

      **b.    Breach of Contract**

Hansen argues that NRS section 11.2075(1)(a) also governs the statute of limitations for the Trust's breach of contract claim because the claim's "true nature" sounds in professional negligence. The Court agrees. However, for the same reasons discussed above, the Court declines to dismiss the Trust's breach of contract claim based on a running of the statute of limitations.

      **2.    *In Pari Delicto***

The doctrine of *in pari delicto* is an affirmative defense that generally "prohibits plaintiffs from recovering damages resulting from their own wrongdoing." *USACM Liquidating Trust v. Deloitte & Touche, LLP*, 764 F. Supp. 2d 1210, 1229 (D. Nev. 2011) (Pro, J.). In the context of an outside auditor who failed to detect corporate fraud, the theory is that the "originator of the fraud is at least as guilty as its negligent auditor." *Id.* at 1230. The first step in determining whether the *in pari delicto* defense applies requires assessing whether the corporate officer's misdeeds are imputed to the corporation. *Kahn v. Dodds*, 252 P.3d at 694–95. If the officer's misdeeds are imputed to the corporation, the court continues to the remaining elements of the defense to decide the doctrine's application. *Id.* As discussed above, however, the Court finds that Chen's misconduct is not imputed to ShengdaTech at this stage in the pleadings. Therefore, the Court's inquiry into the *in pari delicto* affirmative defense ends here, and the

other elements of the defense require no further analysis. The Court denies Hansen's motion to dismiss the Trust's claims on the basis of an *in pari delicto* affirmative defense.

B.     **The Merits**

1.     **Professional Negligence and Malpractice**

The Trust alleges that "Hansen negligently failed to discover that the 2007 Financial Statements and 2008 Quarterly Financial Statements were inaccurate and/or misleading, and that ShengdaTech management was diverting corporate funds to non-corporate uses." (Am. Compl. ¶ 99).

> Under Nevada law, to establish a claim for professional negligence, a plaintiff must show: (1) the defendant had a duty to use the skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) the defendant breached that duty; (3) the breach proximately caused the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.

*Schnelling v. Thomas (In re Agribiotech, Inc.)*, 319 B.R. 216, 223 (D. Nev. 2004) (Pro, J.).

The Court finds the Trust failed to plead sufficient facts to show that a breach of duty caused the Trust damage. Without a showing that Hansen could have discovered the misconduct through its audits of the 2007 Financial Statements and 2008 Quarterly Financial Statements, even if Hansen breached a duty owed to ShengdaTech, its breach would have caused no harm because no misconduct or inaccuracies existed to be discovered.

There are approximately five places within the Amended Complaint that reference inaccuracies and/or managerial misconduct in 2007 and 2008 ("Hansen's audit years"). For the reasons herein discussed, however, these allegations are insufficient to show that Hansen could have discovered the inaccuracies and/or misconduct during its audit of the 2007 Financial Statements and 2008 Quarterly Financial Statements.

First, Paragraph 36 alleges:

> Unbeknownst to ShengdaTech's Board and shareholders, the Financial Statements were far from accurate. While Hansen and KPMG were supposed to be auditing ShengdaTech's financial statements and reviewing its internal controls to guard against fraud, Chen and his cohorts in ShengdaTech management has been looting the Company, stealing money for their own gain and then creating false documents to cover their tracks. Despite their duty to obtain reasonable assurance that ShengdaTech's financial statements were free from material misstatements and omissions, Defendants failed to detect this blatant and rudimentary fraud for years. As a result, the non-management members of the Board did not learn of management's defalcations until 2011, after substantial damage had already been done.

(Am. Compl., ¶ 36).

While generally supportive of the Trust's allegation that Hansen's breach of duty caused ShengdaTech harm, Paragraph 36 lacks concrete facts to support these allegations. The Trust does not identify any particular irregularities that Hansen should have found in its audits of 2007 or 2008. These broad-brushed allegations will not withstand a motion to dismiss. *Iqbal*, 556 U.S. 662, 679–80 (disregarding conclusory allegations in evaluating the complaint).

Second, paragraph 43, subsection (a) alleges that one of ShengdaTech's purportedly top suppliers for 2010 confirmed with KPMG HK that it "had not done any business with [ShengdaTech] for a long time, other than sending some samples to [a ShengdaTech subsidiary] in 2006 or 2007." If true, the fact that the supplier sent samples during Hansen's audit years in no way provides evidence of misconduct that Hansen could have discovered.

Third, Paragraph 57 alleges:

> Through its investigation, the Special Committee determined that ShengdaTech's bank accounts contained substantially less money in 2007–2009 than was reported in the Financial Statements audited and reviewed by Defendants. For example, bank statements from the various banks in which ShengdaTech's subsidiaries (Faith Bloom and the PRC Subsidiaries) held accounts confirmed that these accounts contained less than $68.5 million as of December 31, 2008, and less than $35.9 million as of December 31, 2009—far short of the $114.3 million and $116 million that was reported in the 2008 Financial Statements and the 2009 Financial Statements, respectively.

(Am. Compl., ¶ 57).

Paragraph 57, while pleading detailed discrepancies in bank accounts, does not support the allegations against Hansen. These inaccurate totals were reflected in the 2008 and 2009 Financial Statements, not in the statements reviewed by Hansen.[3] Thus, according to the Amended Complaint, Hansen could not have discovered these discrepancies.

Fourth, paragraph 59, subsection (a) alleges that six customers of record had not purchased anything from a ShengdaTech subsidiary even though ShengdaTech's records indicated sales to these customers in excess of the equivalent of over $30 million between 2006 and 2009. While the allegation specifically references Hansen's audit years, these recorded transactions were reflected in the 2008 and 2009 Financial Statements, not in the statements that Hansen audited. (Am. Compl. ¶ 59). These facts do not support the allegation that Hansen failed to discover the discrepancy during its own audits of the 2007 Financial Statements and 2008 Quarterly Financial Statements.

Fifth, paragraph 59, subsection (e), alleges that another customer's sales were inflated for the reporting years between 2006 and 2009. Again, however, these reported transactions were reflected in the 2008 and 2009 Financial Statements, statements that Hansen did not audit. (*Id.* ¶ 59).

The Trust's Amended Complaint is factually devoid of warnings of misconduct that Hansen could have discovered during its audits of ShengdaTech's 2007 Financial Statements and 2008 Quarterly Financial Statements. The Court therefore grants Hansen's motion to dismiss this claim without prejudice.

---

[3] If the Trust intends discrepancies in the 2008 Financial Statements, which Hansen did not audit, to result in discrepancies in the 2008 Quarterly Financial Statements, which Hansen did audit, it does not so allege.

### 2. Breach of Contract

In Nevada, "the plaintiff in a breach of contract action [must] show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." (citations omitted) *Rivera v. Peri & Sons Farms, Inc.,* 735 F.3d 892, 899 (9th Cir. 2013). The Trust alleges that Hansen breached the letter of engagement for its services with ShengdaTech by: (1) failing to conduct its audits by the PCAOB standards; (2) failing "to obtain reasonable assurance that [the] Financial Statements were free from material misstatements; (3) failing to perform procedures to support and verify the transactions recorded in ShengdaTech's accounts; and (4) failing to directly confirm Shengdatech's reported cash balances." (Am. Compl. ¶ 120).

The Court finds that the Trust adequately pleads the first and second elements of its breach of contract claim, the existence of a valid contract and a breach by the defendant. However, for the same reasons the Trust's professional negligence claim is deficient, the Court dismisses the Trust's breach of contract claim. Even if Hansen breached its contract with ShengdaTech, the Amended Complaint lacks facts to show how ShengdaTech, and now the Trust, could have possibly been damaged as a result of the breach. If managerial misconduct could not have been detected in the financial statements reviewed by Hansen (the 2007 Financial Statements and 2008 Quarterly Statements), Hansen's breach of contract caused no harm. The Court therefore dismisses the Trust's breach of contract claim without prejudice.

### 3. Fraudulent Conveyance

The Trust's Sixth Claim for Relief against Hansen is for fraudulent conveyance under Nevada's Uniform Fraudulent Transfer Act (the "Act"). Nev. Rev. Stat. §§ 112.140–112.250. According to the Trust, fees ShengdaTech paid to Hansen for its auditing services amounted to

fraudulent transfers that may be set aside pursuant to sections 112.180.1(b)(1), 112.180.1(b)(2), and 112.190.1 of the Act. (*See* Am. Compl. ¶¶ 132–39).

Section 112.180(1)(b) of the Act pertains to constructive fraudulent transfers while section 112.190 applies to transfers made by insolvent debtors. *Runvee, Inc. v. United States*, 2013 U.S. Dist. LEXIS 42368, at *29 (D. Nev. Mar. 26, 2013). Both sections of the Act define the transfers as fraudulent as to a *creditor*. The Act defines a "creditor" as "a person who has a claim." Nev. Rev. Stat. § 112.150(4). A "claim," in turn, "means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." *Id.* at § 112.150(3).

The Trust does not allege it is a "creditor" with a right to payment under the Act. Nor can the Court infer that the Trust is a creditor entitled to relief. Instead, the Trust, stepping into the shoes of ShengdaTech, positions itself as the *debtor* by showing that ShengdaTech was the party that transferred funds. (*See* Am. Compl. ¶¶ 134–38). Under the Act, the creditor is the only party with standing to bring a claim; the debtor is not entitled to relief for its own transfers simply because it believes it was insolvent at the time the transfers were made and/or that the debtor did not receive reasonably equivalent value for paid services. The Court therefore grants Hansen's motion to dismiss this claim with prejudice.[4]

///

///

---

[4] The Trust maintains that "[b]ecause Hansen has not moved to dismiss Plaintiff's fraudulent transfer claim, this action will continue against Hansen regardless of the Court's ruling on the instant motion." The Court disagrees. While Hansen did not specifically brief the merits of this claim, it did move to dismiss the Amended Complaint in its entirety. It is within the Court's discretion to dismiss an unmeritorious claim even if not fully briefed by the moving party.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 41) is GRANTED.

IT IS SO ORDERED.

Dated this 9th day of September, 2014.

                                                    ROBERT C. JONES
                                              United States District Judge